IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SIMANU MAGEO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:21-cv-00216 |
| | ) | |
| TONY MAYS, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Before the Court is a pro se Complaint for alleged violation of civil rights (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Simanu Mageo, Jr., an inmate of the Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee. With his Complaint, Plaintiff also filed a motion to appoint counsel (Doc. No. 2) and an application to proceed in forma pauperis (IFP). (Doc. No. 3.)

The case is now before the Court for ruling on the IFP application and motion for counsel, and for an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## **APPLICATION TO PROCEED IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 3) will be granted by separate Order.

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a

plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III. ANALYSIS

Plaintiff alleges that, sometime between 7:30 and 9:30 a.m. on May 21, 2020, he "was aching with serious chest pain [and] collapsed to the floor" of his cell. (Doc. No. 1 at 4, 10.) It appears that the inmate in the next cell alerted a guard, Sgt. Charles Stevens, who failed to respond, but that Corporal Mark Gomez and Nurse Courtney Hudson subsequently responded to Plaintiff's cell. (*Id.* at 4–5, 10–11.) Gomez and Hudson "left a [']medical needed['] post" but did not send Plaintiff for immediate medical attention. (*Id.* at 4, 10–11.) Plaintiff heard Nurse Hudson say, "[H]e's alive I can see him breathing, he's playing," but Plaintiff could not respond because of the serious pain he was experiencing. (*Id.* at 5, 11.) He alleges that he previously "passed out" in the recreation yard at RMSI due to chest pains, as recorded in his "medical record chart." (*Id.*) Gomez and Hudson are alleged to have exhibited deliberate indifference by failing to "respond in a reasonable manner" to the sight of Plaintiff lying on the floor of his cell. (*Id.* at 4–5, 11.) He was left to lie on the floor "for over at least one and [a] half (1-1/2) to two (2) hours" before other

3

inmates alerted an unidentified guard that he needed "real medical assistance." (*Id.* at 5, 11.) Plaintiff was then sent to the RMSI infirmary, where the doctor examined him and sent him to Centennial Hospital for evaluation of his chest pain. There is no allegation of any further symptoms or diagnosis following Plaintiff's visit to the hospital.

Plaintiff seeks compensatory and punitive damages due to Defendants' deliberate indifference to "the pain [he] ha[d] to suffer without knowing what's wrong with Plaintiff." (*Id.* at 5–6, 11–12.) He alleges that he filed a grievance against Stevens, Gomez, and Hudson for violating his Eighth and Fourteenth Amendment rights by deliberately ignoring his medical needs. (*Id.* at 5, 11.) He sues these Defendants in their individual and official capacities, while also naming the RMSI Warden, Tony Mays, and its Health Administrator, Melissa Adams, in their individual and official capacities for "failure to train, failure to supervise, and failure to protect Plaintiff" from the deliberate indifference of Stevens, Gomez, and Hudson. (*Id.* at 4–5.)

Plaintiff's Eighth Amendment medical-care claim requires a plausible allegation of deliberate indifference to a serious medical need. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). Deliberate-indifference claims have both an objective and subjective component. The objective component requires that Plaintiff's chest pain and resulting collapse in his cell present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). The subjective component requires that Defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference thus entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, 972 F.3d

734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). It has been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Here, assuming the truth of Plaintiff's allegations as the Court must at this initial stage, his collapse and inability to respond to inquiry due to extreme chest pain establishes a need for medical treatment that, at least for purposes of initial review, would be sufficiently obvious to a lay person to satisfy the objective component of his claim. *Cf. Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (finding objective component met where inmate "did not suffer from a long-term and well monitored illness, but rather exhibited obvious manifestations of pain and injury" including prior complaints of "sharp and severe" stomach pain and vomiting). Moreover, the allegation that Defendants Gomez and Hudson withheld immediate medical attention despite their recognition that some response was needed, based on the observation that Plaintiff was breathing and must therefore be "playing," is sufficient at this point to establish a colorable claim to their subjective culpability. *See id.* at 899 (finding that when defendants delay attending to a serious medical need for non-medical reasons, "their conduct in causing the delay creates the constitutional infirmity," as "the delay alone in providing medical care creates a substantial risk of serious harm"); *see also Reeves v. Wallington*, No. 06-10326, 2007 WL 1016979, at *12 (E.D. Mich. Mar. 29, 2007) ("The test for deliberate indifference is whether there exists a 'substantial risk of serious harm,' not whether it actually occurred. … When [shortness of breath and chest pain] result in a trip to the emergency room–even if only to verify no permanent physical damage– they have left the reservation of 'de minimis' and they have entered the domain where a jury could

find them to constitute actionable injury."). This Eighth Amendment claim against Defendants Gomez and Hudson in their individual capacity will be allowed to proceed for further development.

However, Plaintiff fails to state a colorable claim against Defendants Stevens, Mays, and Adams in their individual capacity, or against any Defendant in their official capacity. Plaintiff's only allegation against Stevens is that he received and ignored a neighboring inmate's report that Plaintiff had collapsed in his cell (Doc. No. 1 at 4), during the same time frame in which Defendants Gomez and Hudson responded to Plaintiff's cell. This bare allegation does not support a claim that Stevens—who did not observe Plaintiff collapsed in his cell—had any "obligation under the Eighth Amendment to check on [Plaintiff] without . . . delay," or that Stevens's failure to immediately respond to the inmate's report otherwise breached a constitutional duty owed to Plaintiff. *Goode v. Berlanga*, 646 F. App'x 427, 431 (6th Cir. 2016) (distinguishing *Speers v. County of Berrien*, 196 F. App'x 390, 398–99 (6th Cir. 2006), where "guards, upon learning that Speers was foaming at the mouth and observing him collapsed in his cell, should have contacted medical personnel in response to Speers's condition or tried to engage Speers verbally or enter his cell," rather than taking no action after another inmate asked them to check on Speers)). The individual-capacity claim against Stevens will therefore be dismissed.

Plaintiff's only individual-capacity allegation against Warden Mays and Health Administrator Adams is that they failed to properly train or supervise Gomez and Hudson, respectively, for whose actions Mays and Adams are allegedly responsible. (Doc. No.1 at 3–4.) But "[Section] 1983 liability must be based on more than respondeat superior, or the right to control employees," and so "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295,

300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Plaintiff does not allege that Mays or Adams participated in any way in his treatment by their subordinates on May 21, 2020. The individual-capacity claims against them will be dismissed.

The official-capacity claims against Defendants Mays, Stevens, and Gomez must be dismissed. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), and the State of Tennessee—which employs these individuals as officials at RMSI—is, under the Eleventh Amendment, immune from suit for damages. *Id.* at 814 ("State governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment."); *see also Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006) ("[T]he Tenth and Eleventh Amendments bar suits in federal court when the action is 'in essence one for the recovery of money from the state [and] the state is the real, substantial party in interest,' which invariably will be the case when the claimant sues a state employee in his official capacity.") (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

Finally, the official-capacity claims against Hudson and Adams are tantamount to claims against their corporate employer, Centurion (*see* Doc. No. 1 at 6), and Section 1983 liability only attaches to private corporations providing healthcare to state prisoners if the alleged harm is causally related to the execution of a policy or custom of the corporation. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001); *Eads v. Tennessee*, No. 1:18-cv-00042, 2018 WL 4283030, at *8 (M.D. Tenn. Sept. 7, 2018) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison

inmates may be sued under § 1983 as one acting under color of state law," and that such an entity "can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the [entity] and the alleged constitutional violation." (citations omitted)). No such corporate policy is identified in the Complaint, nor are Hudson and Adams alleged to have acted or failed to act in accordance with any custom of Centurion.

Accordingly, Plaintiff will not be allowed to proceed with his official-capacity claims against any Defendant.

## MOTION TO APPOINT COUNSEL

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 2.) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), and *Lavado v. Keohane*, 992 F.2d 601, 606–07 (6th Cir. 1993)). As no such circumstances are yet readily apparent, the Motion to Appoint Counsel will be denied without prejudice to renewal if circumstances warrant after service of process is accomplished.

## CONCLUSION

As explained above, the Complaint states a nonfrivolous Eighth Amendment claim against Defendants Gomez and Hudson that will proceed for further development. Defendants Mays, Adams, and Stevens will be dismissed from this action.

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE